**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
CASE NO.  08-60028-CIV  COOKE/BANDSTRA

ROBERT DAVID SPENCER,

      *Plaintiff*,

v.

CITY OF HOLLYWOOD, FLORIDA,

      *Defendant*.

                                /

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Defendant's Motion for Summary Judgment [DE 32].  A Response [DE 34] and Reply [DE 37] have been filed, and this motion is ripe for adjudication.  For reasons explained below, the Motion is granted.

### BACKGROUND

Plaintiff, Robert Spencer ("Spencer"), is an American male, previously employed by the City of Hollywood ("Hollywood") as a Laboratory Technician.  The operative complaint in this Case, Plaintiff's Amended Complaint [DE 3], was filed on February 11, 2008,  approximately a year-and-a-half after Plaintiff resigned his position.  Plaintiff brings three counts, with Counts I and II alleging disparate treatment in violation of the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, and Count III alleging retaliation in violation of Title VII.

This entire action stems from Hollywood's promotion of another Laboratory Technician, Rashmi Patel (an Indian female), to the position of Chief Chemist, over Spencer's application for the same position.

**STANDARD OF REVIEW**

The standard of review on a motion for summary judgment is well settled.  Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

**ANALYSIS**

**Disparate Treatment Claims**

"The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.* 139 F.3d 1385, 1387 (11th Cir. 1998). Therefore, Counts I and II, alleging disparate treatment under Title VII and the FCRA respectively, will be analyzed together.  There are three stages of proof inherent in the type of discrimination case presented.  First, the plaintiff has the burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination.  *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  If Plaintiff is successful, the second stage is a shifting of the burden to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).   Lastly, if defendant has put forth such a reason, plaintiff is afforded the opportunity to show that defendant's proffered reason or reasons were merely a pretext for discrimination.  *Burdine*, 450 U.S. at 253.

To establish a prima facie case of disparate treatment a plaintiff must show that: (1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that such an action was in contrast to similarly situated non-class employees; and (4) that there was a causal connection between the adverse employment action and plaintiff's membership in the protected class.  *See Wilson v. B/E Aerospace, Inc.*,  376 F.3d 1079, 1087 (11th Cir. 2004) ("A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."); *Alford v. Florida,* 390 F. Supp. 2d 1236, 1247 (S.D. Fla. 2005) ("Generally, a prima facie case of disparate treatment is established

where the complainant shows: (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; (3) that she and a similarly situated non-protected person were dissimilarly treated; and (4) that the employment action was causally related to the protected status.") (citations omitted).

There is no argument that, by claiming to be an American male, Spencer is part of a protected class based on national origin and gender.  Whether he has suffered an adverse employment action requires a bit more probing.  In Count I, Plaintiff specifically states that his "termination was based upon his national origin and he was treated with disparate treatment in the terms and conditions of his employment . . . and was wrongfully terminated based upon his national origin whereby other comparators were not."  In Count II, the language is nearly identical:  "That the Plaintiff.s termination was based upon his national origin and sex and he was treated with disparate treatment in the terms and conditions of his employment . . . and was wrongfully terminated based upon his national origin and sex whereby other comparators were not."  Further, in response to Defendant's Motion for Summary Judgment, Plaintiff asserts, with absolutely no analysis, factual support, or discussion, that he was constructively terminated[1].  The problem caused by these allegations is that Plaintiff admitted,

---

[1]Throughout his Amended Complaint and Response to Defendant's Motion for Summary Judgment, Plaintiff refers to the fact that he was not promoted to chief chemist, even though he believes he was the best candidate for the position.  Plaintiff, however, has not brought a separate failure-to-promote claim.  And, while failure to promote can constitute a tangible employment action, at least in the retaliation context, *see Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998), the Amended Complaint, and to a greater degree, the Plaintiff's Response to the motion for summary judgment, make clear that the alleged disparate treatment is termination of employment, not failure to promote.  Even if Plaintiff had properly alleged failure to promote as the basis for disparate treatment, he has provided no evidence or argument that he meets the criteria to establish a prima facie case of disparate treatment by failure to promote.  *See Springer v. Convergys Customer Mgmt. Group, Inc.,* 509 F.3d 1344, 1348 n.2 (11th Cir. 2007) ("In order to establish a prima facie case on the basis of a failure to promote, Plaintiff must demonstrate that: (i) she belonged to a protected class; (ii) she was qualified for and applied for a position; (iii) despite qualifications, she was rejected; and (iv) the position was filled with an individual

during his deposition, that he resigned and was, in fact, not terminated.  Moreover, Plaintiff's

Amended Complaint does not actually allege constructive termination.  Even if it did, Spencer

has failed to provide sufficient support for such a claim.

      To state a claim for constructive discharge, "a plaintiff 'must demonstrate that [her]

working conditions were so intolerable that a reasonable person in [her] position would be

compelled to resign.'" *Morgan v. Ford*,  6 F.3d 750, 755 (11th Cir. 1993) (citations omitted).

Other than a few sentences stating that after he was denied the promotion, Plaintiff experienced

increased stress, and health issues potentially related to that stress, there has been no showing

that working conditions were so intolerable that Spencer was forced to resign.  Even in his

Statement of Disputed Facts[2] the furthest Plaintiff goes is to claim that the increased stress due to

the alleged retaliation by Patel (then his superior) forced him to begin looking for alternative

employment.  Plaintiff provides little in the way of specific allegations that give rise to

intolerable circumstances, and those few specific situations he does reference are supported only

by his own affidavit.  Furthermore, Plaintiff provides no explanation for why, if the situation was

so unbearable and stressful, he remained at his position for over a year after he was denied the

---

outside the protected class."); *Burdine*, 450 U.S. at 253 ("The plaintiff must prove by a
preponderance of the evidence that she applied for an available position for which she was
qualified, but was rejected under circumstances which give rise to an inference of unlawful
discrimination.").

    [2]Plaintiff has argued in its Reply that Defendant's Response and Statement of Disputed
Facts should be stricken for failure to comply with Local Rule 7.5.  In addition to exceeding the
maximum length for a statement of facts permitted under Rule 7.5.C, Plaintiff's Statement fails
to "correspond with the order and with the paragraph numbering scheme used by the movant . . .
."  More significantly, "[a]ll material facts set forth in the movant's statement filed and supported
as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing
party's statement . . . ."  L.R. 7.5.D.  Defendant's failure to properly respond to Plaintiff's
Statement of Material Facts makes controverting those facts all the more difficult.  The Court,
however, will not strike the response, and has endeavored to discern from Defendant's Statement
any controverted facts or genuine issue of material fact.

promotion, or failed to bring a hostile working environment claim.[3]  Plaintiff has not properly alleged and demonstrated a constructive discharge or any underlying intolerable conditions. Accordingly, Plaintiff has failed to meet the second of the requirements to set forth a prima facie case of disparate treatment.

Although not entirely necessary, it is worthwhile to briefly address the third and fourth disparate treatment, prima facie criteria.  As to similarly situated non-class employees who were treated differently, Plaintiff has provided no evidence to support his conclusory arguments that his non-class comparators should have been fired, or not promoted, because they lacked the skills and abilities of Plaintiff.  *See* Amended Complaint, DE 3, ¶¶60, 61, 71, 72.  Moreover, in a manner perplexing to the Court, Plaintiff's Response does nothing to try and add support to his argument that he meets the third criteria.  Instead, Plaintiff appears to respond to an argument not put forth by Defendant, regarding the commonality of supervisors as it relates to employees being similarly situated.  Plaintiff's Response does not put forth an affirmative argument, let alone one sufficiently supported by record evidence, that similarly situated, non-class employees exist and were treated differently from Plaintiff.

Lastly, since I have found that Plaintiff has not suffered an adverse employment action cognizable in this Case, it is not possible to find that a causal connection between an adverse employment action and Plaintiff's membership in a protected class.  However, even if Plaintiff suffered an adverse employment action, his only supporting evidence is his own affidavit--which, consisting mainly of his opinion, speculation, conjecture, unsupported legal conclusions and

---

[3]I am not suggesting that Plaintiff should have resigned sooner, nor that his allegations could necessarily support a hostile work environment claim.  I only mean to state that Plaintiff's actions do not appear to fully comport with his allegations.

statements for which he is clearly without personal knowledge[4]--lends no support to his theory

---

[4]In its Reply, Defendant has moved to strike, in part or in its entirety, Plaintiff's forty-seven page affidavit.  It is not necessary to strike the entire affidavit.  "[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." *Ellis v. England,* 432 F.3d 1321, 1327 (11th Cir. 2005).  The inclusion of a blanket statement that the affidavit is made upon personal knowledge will not save statements made upon belief, no matter how strong the belief.  *See Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002).  Furthermore, broad assertions in affidavits, made without specific supporting facts, are insufficient to prevent summary judgment.  *See Pace*, 283 F.3d at 1280 (citing *Connell v. Bank of Boston*, 924 F.2d 1169, 1177-78 (1st Cir.1991)).  Here, throughout the affidavit, Plaintiff repeatedly makes broad assertions without specific factual support, draws legal conclusions, and makes statements that cannot be based on personal knowledge.  For example, the following paragraphs or portions of paragraphs in Plaintiff's affidavit are either unsupported factual allegations, legal conclusions, statements made without personal knowledge, or otherwise insufficient to prevent summary judgment:

¶22 --  "Defendant attempts to ignore or conceal from the Court the actual qualifications of the candidates."

¶40 -- "All of these disciplinary matters should be inadmissible as evidence in this case, since all of these documents have been retained by Defendant in Plaintiffs personnel file in violation of Sec. 7 of the Employment Agreement."

¶52 -- "Apparently the proposed revision in SOP wasn't important or wasn't desired, because Ms. Patel never wrote the SOP nor followed the stated NELAP procedures for implementing any SOP changes in this or any other matter at least until after 04 July 2006, when Plaintiff separated from Defendant's employment."

¶58 -- "Paragraph 11 - Mr. Bayler seems unable to conclusively determine whether to label my personality as too aggressive or too passive."

¶67 -- "Paragraph 12 - The City uses the 'best of three' rule under the Civil service rules, as they stipulate. Why wasn't a third person considered? Why does The City of Hollywood omit mention of Gary Meyers, Nina Fouts, and Lourdes Lanz? This is mere obfuscation of the truth. When the candidates are OBJECTIVELY evaluated, based upon the job requirements, Rashmi Patel was not even in the top three."

¶76 -- "Yet, The City of Hollywood has 'circled the wagons' to defend themselves against the present case. In the present case, there is ample evidence of deceit, obfuscation, obstruction of justice through withholding of relevant evidence, and even perjury and the suborning of perjury."

¶122 -- "Paragraph 45 - (It would be nice if Defendant could conclusively determine whether the Chief Chemist is a supervisor or not. Defendant seems to believe, that the Chief Chemist is a supervisor one moment, but not the next. Defendant says the Chief Chemist is not supervisory in regard to the hiring decision, yet is supervisory in regard to the disciplinary action. Which one is it? Is the Chief Chemist only a supervisor when Defendant wants it to be so? If Defendant is unable to determine this, how is the employee to determine it?)"

Accordingly, the Court will consider only the admissible parts of Spencer's affidavit, and will disregard the rest.  *See Lee v. Nat'l Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980)

that he was denied the promotion and constructively terminated based on his national origin or gender or both.  In short, although Plaintiff passionately argues that Defendant made a mistake in promoting Patel over him, and that Defendant intended to promote Patel regardless of the applications of equally or more highly qualified employees, Plaintiff has presented no evidence that he was subject to disparate treatment based on the fact that he was an American male.  Even the affidavit of Carl Gulino, the former Chief Chemist and supervisor of both Spencer and Patel, while lauding Spencer and suggesting that he was the better candidate, provides no evidence of discrimination.  The conclusion paragraph states that Gulino "can only conclude that [Patel's] promotion was based on reasons other than [reviews, performance, and  computer skills.]" This statement is tantamount to Gulino's *belief*, and is therefore not personal knowledge.  Reinforcing that conclusion is the fact that Gulino retired in January 2005, six months prior to Patel's promotion over Plaintiff, and was not involved in the promotion decision.

I find that Plaintiff has failed to meet his burden of proof to establish a prima facie case of disparate treatment.  But, even if Plaintiff had, the second and third stages would still defeat his claims.  Defendant has articulated a legitimate, nondiscriminatory reason why Spencer was not promoted.  *See Burdine,* 450 U.S. at 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Of course, Defendant has only articulated a basis for not promoting Plaintiff, as there could be no basis for Plaintiff's termination because Plaintiff resigned and did not plead constructive termination.  To rebut a prima facie case, had one been made out, Defendant "need only produce admissible evidence which would allow a trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Burdine*, 450 U.S.

---

("The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion.")

at 257.  Hollywood has submitted uncontroverted facts, supported by affidavit, that the normal

hiring process was followed and that upon assessment of both Spencer's and Patel's respective

qualifications, reviews, and performances as interim Acting Chief Chemist, Patel was selected

for the promotion.  This is sufficient to satisfy Defendant's light burden to provide evidence of

legitimate nondiscriminatory reasons for not promoting Plaintiff.

That brings the Court to the third stage, Plaintiff's opportunity to rebut Defendant's

articulated reasons as pretext for discrimination.  *See Burdine*, 450 U.S. at 253.

> [T]o avoid summary judgment [Plaintiff] must introduce
> significantly probative evidence showing that the asserted reason is
> merely a pretext for discrimination. The burden of proving pretext
> merges with the plaintiff's ultimate burden of proving that [national
> origin or gender] was a determining factor in his [rejection], and it
> can be met by showing that a discriminatory reason more likely
> than not motivated the employer's decision, or by discrediting the
> employer's proffered explanation.

*Clark v. Coats & Clark, Inc,.*  990 F.2d 1217, 1228 (11th Cir. 1993).  The Eleventh Circuit has

succinctly stated the manner by which a Plaintiff can *not* prove pretext:

> a plaintiff cannot prove pretext by simply arguing or even by
> showing that he was better qualified than the officer who received
> the position he coveted. A plaintiff must show not merely that the
> defendant's employment decisions were mistaken but that they
> were in fact motivated by race. We have explained, a plaintiff may
> not establish that an employer's proffered reason is pretextual
> merely by questioning the wisdom of the employer's reasons, at
> least not where ... the reason is one that might motivate a
> reasonable employer.

*Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1339 (11th Cir. 2000) (citations and internal

quotation marks omitted).  This, however, is precisely what Plaintiff has done.  He has attempted

to show why he was a better qualified applicant for Chief Chemist, and that the Defendant was

mistaken in choosing Patel to fill the position.  Plaintiff has not, however, presented any specific

evidence, let alone significantly probative evidence, that the employment decision was motivated

by national origin or gender.

Therefore, because Plaintiff has not established a prima facie case of disparate treatment, and because even if he had, Defendant's legitimate nondiscriminatory reasons for its decision have not been rebutted, Plaintiff's claims of disparate treatment (Counts I and II) must fail.

### Retaliation

First, it appears as if Plaintiff has dropped his retaliation claim.  Defendant clearly moved for summary judgment as to the disparate treatment claims and the retaliation claim.  In fact, Defendant spends approximately five pages of its seventeen-page Motion addressing the retaliation claim.  Plaintiff, on the other hand, in his Response only argues that summary judgment should be denied because material issues of fact exist regarding the disparate treatment claims.  In his Statement of Disputed Facts, Spencer has only a handful of paragraphs that reference, either explicitly or implicitly, the alleged retaliation, and even these fail to controvert the facts set out in Plaintiff's Statement of Material Facts.  Moreover, and more telling, the "Argument" section of Plaintiff's Response only discusses the disparate treatment claim and never once uses the word "retaliation," references the retaliation claim or Count III in any manner, or puts forth any other argument related to the retaliation claim.  However, for the sake of thoroughness, and because summary judgment cannot be granted by default, the Court will address why Defendant is also entitled to summary judgment on this claim.

"[A] plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show (1) that [he] engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities."  *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

For retaliation to be actionable, "a plaintiff must show that a reasonable employee would

have found the challenged action materially adverse, which in this context means it well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-68 (U.S.) (citations and

internal quotation marks omitted).  "[N]ormally petty slights, minor annoyances, and simple lack

of good manners will not create such deterrence."  *Id.* at 68.

      The only possible statutorily protected activities alleged by Plaintiff are the filing of his

complaint with the City of Hollywood Human Resources Department and his Charge of

Discrimination with the EEOC.  Hollywood has conceded that the EEOC Charge constitutes

protected activity.  The next question then, is whether Spencer suffered an adverse employment

action.

      First, the decision not to promote Spencer cannot be used as an adverse employment

action in the retaliation claim because the alleged acts of retaliation did not occur until after the

promotion decision was announced.  The uncontroverted facts, as taken from Defendant's

Statement of Facts, are that on June 27, 2005, Plaintiff filed a complaint with the City of

Hollywood Human Resources Department alleging discrimination based on gender and national

origin.  On August 4, 2005, Plaintiff was given a verbal warning and received an Oral

Counseling/Disciplinary Report for disrespect to a supervisor, insubordination, and substandard

performance.  Although Plaintiff alleges that this disciplinary action was retaliation, Plaintiff, at

his deposition, admitted to the facts that underlay the disrespect to a supervisor, insubordination,

and, at least in part, substandard performance citations.  Furthermore, in the Amended

Complaint, Plaintiff alleges that retaliatory actions occurred only after the filing of his EEOC

charge.

      On December 8, 2005, Plaintiff filed his EEOC charge, alleging discrimination and

retaliation based on gender and national origin.  It is the actions alleged to have occurred after

this charge was filed that Plaintiff specifically raises in his Title VII retaliation claim (Count III).

The only specified actions in Count III are a "systematic retaliatory scheme," and by

incorporation of the fact section of the Amended Complaint, the Written Reprimand Plaintiff

received on April 12, 2006.  This written reprimand was for malicious use of profane language

and disrespect to a supervisor.  Again, Plaintiff's deposition makes clear that he did use profane

language in a conversation with his superior, Patel.

       Both the oral and written reprimands were, according to Defendant, part of a progressive

disciplinary program.  Plaintiff has not controverted this claim.  Here, the written reprimand does

not rise to the level of an adverse employment action.    Simply put, there is no indication that

this was a type of reprimand that would dissuade a reasonable worker from making or supporting

a charge of discrimination.  Further, Plaintiff has put forth no argument and no evidence that the

reprimand itself constituted a tangible employment action resulting in a significant change in

Plaintiff's employment status.  *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998);

*see also Haynes v. Level 3 Commc'n, LLC,*  456 F.3d 1215, 1224 (10th Cir. 2006) ("A written

warning may be an adverse employment action only if it effects a significant change in the

plaintiff's employment status.");  *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("As we

have noted before, 'formal criticism or poor performance evaluations are [not] necessarily

adverse actions' and they should not be considered such if they did not 'affect[ ] the [employee's]

grade or salary.'") (citations omitted); *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1241

(11th Cir. 2001) (agreeing with other courts that "criticisms of an employee's job

performance-written or oral-that do not lead to tangible job consequences will rarely form a

permissible predicate for a Title VII suit," and collecting cases supporting same).

       Lastly, even if the reprimands were tangible employment actions, the written reprimand

came four months after Plaintiff filed his EEOC charge.  This lapse of time is too great, without

some other connecting elements, to support a causal connection between the protected activity and the alleged retaliation. *See Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 978 (11th Cir. 2008) ("Although we interpret 'the causal link requirement broadly,' merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element-for temporal progression to be enough, the events must be in "very close" proximity.") (citations omitted).

Accordingly, Plaintiff's retaliation claim fails because he cannot establish the second and third elements of a prima facie case of retaliation.

**CONCLUSION**

For all of the above reasons, Defendant's Motion for Summary Judgment [DE 32] is **GRANTED**.  All pending motions, if any, are **DENIED** *as moot*.  The Clerk is instructed to **CLOSE** this Case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of April 2009.

_____

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*